RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 20-5119

JAMES FREI,

*Defendant-Appellant.*

─────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cr-00032-1—Eli J. Richardson, District Judge.

Decided and Filed: May 3, 2021

Before: BATCHELDER, GRIFFIN, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:** Charles D. Buckholts, BUCKHOLTS LAW OFFICE, Nashville, Tennessee, for Appellant. J. Christopher Suedekum, Kathryn D. Risinger, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

─────────────

**OPINION**

─────────────

ALICE M. BATCHELDER, Circuit Judge. A jury convicted defendant-appellant James Frei of eight counts of child-exploitation-related crimes, including four counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251. The district court sentenced Frei to a 318-month prison term and a life term of supervised release. On appeal, Frei argues that: (1) the district court's jury instruction regarding § 2251 was misleading and erroneously omitted Frei's

proposed instruction; and (2) his sentence is substantively unreasonable. Both arguments are meritless. We AFFIRM.

**I.**

Frei is a 48-year-old male from North Carolina who, in the spring of 2016, joined a Facebook group created for teenage girls. He used the forum to contact TB, a 15-year-old living in Tennessee. Frei told TB that she was "sexy" and later told her that he would teach her about sex. TB accepted Frei's advances and Frei took advantage; he sent her nude photos of himself and tried to convince TB to send him nude and sexually suggestive images of herself. Frei eventually convinced TB to meet at her parents' house in Nashville to have sex. After they agreed to meet, Frei asked to photograph their sexual encounters.

Frei made three trips to Nashville in May and June 2016. On each occasion, Frei and TB engaged in sexual activity and Frei took sexually explicit photos and videos of TB. In one of the several videos, Frei pointed the camera at TB as he had sex with her and told her to "smile," to act "like [she] was enjoying [her] time," and to "look at the camera." He also told her that "we need to get you over this shyness," and the videos showed him adjusting the camera to capture their sexual activities. Frei saved and organized these images in his phone under TB's name.

The National Center for Missing and Exploited Children notified the Metro Nashville Police Department (MNPD) about Frei's and TB's Facebook conversation. MNPD identified Frei and obtained a search warrant for his home in North Carolina. After his arrest, Frei admitted that he knew that TB was only fifteen years old and that he took numerous photos and videos of their engaging in sexual conduct. Law enforcement found approximately 500 files of child pornography, including dozens of photos and videos of Frei engaging in sexual activity with TB.

The grand jury indicted Frei on nine counts. Counts one through four charged Frei with sexual exploitation of a minor (i.e., producing child pornography), in violation of 18 U.S.C. §§ 2251(a) and (d). Count five charged Frei with enticing a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b). Counts six, seven, and eight charged Frei with traveling in interstate commerce to engage in illegal or illicit sexual conduct with a minor, in violation of 18

U.S.C. § 2423(b).[1]　And count nine charged Frei with transportation of child pornography in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b).

Near the end of the trial, the court and parties conferenced to discuss jury instructions. The parties had jointly requested Sixth Circuit Pattern Jury Instruction 16.01, which specifically addresses § 2251, for counts one through four.　As relevant here, Pattern Jury Instruction 16.01 explains that the jury must find:

> That the defendant employed, used, persuaded, induced, enticed, or coerced [TB,] a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct on or around the date alleged in each Count.

Pattern Jury Instruction 16.01(2)(C) defines the phrase "for the purpose of":

> The term "for the purpose of" means that the defendant acted with the intent to create visual depictions of sexually explicit conduct, and that the defendant knew the character and content of the visual depictions.

Frei proposed a supplemental instruction to add to Pattern Jury Instruction 16.01(2)(C) additional language, namely:

> *The defendant must have engaged in sexually explicit conduct with the specific intent to produce a visual depiction.　It is not enough for the government to simply prove that the defendant purposely produced the visual depiction.*

Def.'s Proposed Suppl. Jury Instr. (emphasis added).　Frei's counsel explained that his proposed supplemental language was a "hybrid" that he had formulated from his reading of the statute and a Fourth Circuit case interpreting the mens rea requirement.

The district court rejected Frei's proposed language, emphasizing that the instruction needed to be an accurate statement of the law.　The district court reviewed the relevant law and proposed its own language to respond to Frei's proposal and his anticipated arguments in closing.　The district court's proposed language would have instructed the jury that "[t]he government must show that making a visual depiction was a purpose for causing a minor to engage in sexually explicit conduct."　The district court explained that the language was better

---

[1]The district court dismissed count eight upon the government's motion.

because even under the case relied upon by Frei, a person can have multiple purposes, and the government need only prove that it was one of the defendant's purposes.

Both parties opposed the district court's proposed language. The government contended that Pattern Jury Instruction 16.01 already accurately tracked the statute's language, so modifying it risked injecting error. Frei objected, preferring Pattern Jury Instruction 16.01 because otherwise, there was a risk the jury might be confused by switching from "the purpose" to "a purpose." Frei noted that, even if the court stuck with the Pattern Jury Instruction, he would argue in closing that he did not have the requisite mens rea.

The court therefore abandoned its proposed language and used Pattern Jury Instruction 16.01 without alteration. Before instructing the jury, the court acknowledged that Frei had properly preserved his objections to both the final jury instruction and the court's rejection of his proposed jury instruction. In his closing argument, Frei's counsel argued to the jury that the government had to prove that Frei's recording of TB having sex "must have been the purpose of the sexual act" and disputed that the purpose of Frei's conduct was anything more than having sex.

The jury convicted Frei on all eight counts.

The Presentence Report (PSR) calculated a total offense level of 43 and a criminal history category of one, resulting in a guidelines range of life imprisonment. At the sentencing hearing, the district court adopted the PSR's calculations without objection from either party. Frei requested a downward variance based on the 18 U.S.C. § 3553(a) factors. Frei argued that the four-point enhancement for committing multiple distinct offenses on different dates under USSG § 3D1.4 and the five-point enhancement for engaging in a pattern of activity involving prohibited sexual conduct under USSG § 4B1.5(b)—while correctly applied—double-counted Frei's conduct and imposed an overly harsh punishment.

The district court agreed with Frei. After a thorough colloquy with the parties and § 3553(a) analysis, the court determined that a life sentence was too harsh and sentenced Frei to a 318 months' imprisonment for counts one through seven, and 240 months' imprisonment for count nine, to run concurrently.

Frei timely appeals.

## II.

On appeal, Frei challenges both the jury instructions and the substantive reasonableness of his sentence. We review both issues for abuse of discretion. *United States v. Godofsky*, 943 F.3d 1011, 1019 (6th Cir. 2019) (jury instructions); *Gall v. United States*, 552 U.S. 38, 41 (2007) (substantive reasonableness).

### A. Jury Instructions

Frei argues that (1) the Sixth Circuit Pattern Jury Instruction 16.01(2)(C) misled and confused the jury; and (2) the district court improperly rejected Frei's proposed jury instruction. Both arguments fail.

### 1. Pattern Jury Instruction 16.01

Frei argues that Pattern Jury Instruction 16.01(2)(C) misled and confused the jury because it is inconsistent with § 2251(a)'s language and fails to precisely specify the defendant's requisite degree of culpability.

We "review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision." *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) (citation omitted). "There is a high standard for reversal of a conviction on the grounds of improper instructions." *Id.* We "may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading, and prejudicial." *Id.*

The court's jury instruction regarding § 2251(a), viewed as a whole, is not confusing, misleading, or prejudicial. The jury instruction mirrors Sixth Circuit Pattern Jury Instruction

16.01(2)(c) and accurately states the law. To start, "we regularly look to whether jury instructions mirror or track the pattern jury instructions as one factor in determining whether any particular instruction is misleading or erroneous." *United States v. Damra*, 621 F.3d 474, 499–500 (6th Cir. 2010); *see United States v. Allen*, 712 F. App'x 527, 537 (6th Cir.2017) (finding no abuse of discretion when the district court followed the Pattern Jury Instruction and refused to change the instruction as requested by the defendant); *United States v. Hines*, 398 F.3d 713, 718 (6th Cir. 2005) (holding that the district court did not plainly err when it "tracked the language and organization of the Sixth Circuit Pattern Jury Instruction"). In the same vein, this court has noted the potential problems that can arise when trial courts stray from the Pattern Jury Instructions. *See, e.g.*, *United States v. Rios*, 830 F.3d 403, 434 (6th Cir. 2016) (discussing modification of reasonable-doubt Pattern Jury Instruction and noting that "departures from pattern instructions . . . tend only to muddy the waters further"); *United States v. Clinton*, 338 F.3d 483, 490–91 (6th Cir. 2003) (describing the district court's failure to use the Sixth Circuit Pattern Jury Instruction as "risky" when giving an *Allen* charge).

But our deference to the pattern jury instructions partially depends on whether our case law supports the instruction in question. *See United States v. Pina*, 724 F. App'x 413, 423 (6th Cir. 2018) (affirming the district court's use of the Pattern Jury Instruction because this court's case law amply supported it); *United States v. Young*, 516 F. App'x 599, 602 (6th Cir. 2013) ("The district court strictly adhered to the wording of the Sixth Circuit Pattern Jury Instruction which accurately states the law of this Circuit."). Here, our case law does not directly support Pattern Jury Instruction 16.01(2)(C). The committee commentary cites *United States v. Wright*, No. 1:12–CR–130, 2013 WL 164096, at *7 (W.D. Mich. Jan. 5, 2013), *affirmed*, 774 F.3d 1085 (6th Cir. 2014), but our holding in that case does not address the mens rea requirement of § 2251(a). *See* Sixth Circuit Pattern Jury Instruction § 16.01 (2019), Committee Commentary. To be sure, the district court opinion analyzed the mens rea requirement, but the parties in that case did not appeal that issue, and this court did not rule on that issue. *Id.* So, we must assess for the first time whether Pattern Jury Instruction 16.01(2)(C) is soundly based on the law. We conclude that it is.

A defendant violates § 2251(a) if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Contrary to Frei's argument, § 2251(a) contains no language that requires the defendant to sexually engage with the minor for the *sole* purpose of producing visual depictions. Instead, § 2251 is a specific-intent crime, which requires that the defendant must purposefully or intentionally commit the act that violates the law and do so intending to violate the law. *See United States v. Ramamoorthy*, 949 F.3d 955, 961 (6th Cir. 2020) (defining specific intent).

This interpretation is also congruent with the interpretations of at least seven of our sister circuits that omit the lesser culpability of incidental purpose, *see United States v. Palomino-Coronado*, 805 F.3d 127, 132 (4th Cir. 2015) (explaining that the defendant must act "with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture"); *United States v. Fortier*, 956 F.3d 563, 567 (8th Cir. 2020) (explaining that the defendant must act with purpose, not merely by accident); *United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018) (same), and the greater culpability of sole purpose, *see United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) (rejecting the contention that the illegal activity of producing visual depictions must be the sole dominant purpose); *Palomino-Coronado*, 805 F.3d at 132 (same); *United States v. Fifer*, 863 F.3d 759, 768 (7th Cir. 2017) (same); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) (same); *United States v. Miller*, 819 F.3d 1314, 1316 (11th Cir. 2016) (same).

The Pattern Jury Instruction addresses the elements of § 2251(a) and includes a specific-intent requirement that the defendant "acted with the *intent* to create visual depictions of sexually explicit conduct, and that the defendant *knew* the character and content of the visual depictions." Sixth Circuit Pattern Instruction 16.01 (emphasis added). Furthermore, the jury instruction is neither confusing nor prejudicial. First, the Sixth Circuit Pattern Jury Instructions are presumptively straightforward, and there is no evidence that the jury questioned the language's meaning. Second, the Pattern Jury Instruction allowed Frei to argue that he did not have sex with TB for the sole purpose of creating the visual depictions. Indeed, in his Rule 29 motion for judgment of acquittal, Frei's counsel focused almost entirely on his claim that Frei had engaged

in sexual conduct simply to have sex, not to create a visual depiction. And in his closing argument to the jury, counsel argued at length that the evidence demonstrated only that Frei and the minor had an ongoing sexual relationship, and that he engaged in that relationship simply for the purpose of having sex, and not for the purpose of creating any visual depictions.

The district court did not abuse its discretion by adopting Pattern Jury Instruction 16.01(2)(C).

### 2. *Frei's Proposed Jury Instructions*

Next, Frei argues that the district court erred by denying his proposed § 2251(a) mens rea jury instruction.

We reverse the judgment only if the litigant's denied instruction was: "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense." *Godofsky*, 943 F.3d at 1019 (quoting *United States v. Volkman*, 797 F.3d 377, 385 (6th Cir. 2015)).

Frei argues that the instruction should include supplemental language expanding on the requisite intent. Frei's proposed language can be read two ways. One interpretation is that the defendant must do more than purposely take a picture or click the shutter-release button without knowing the content of that visual depiction (the equivalent of incidental purpose). The other interpretation is that the defendant must have had sex for the *sole* purpose of producing a visual depiction.

The incidental-purpose reading fails because the instruction delivered to the jury substantially covered Frei's proposed language. The instruction required that the jury find from the evidence that Frei intended to produce the visual depiction and that he knew the character and conduct of the images, not that he made them by accident.

The sole-purpose reading fails because Frei's proposed instruction did not accurately state the law.  Section 2251(a) does not have a sole-purpose provision and no court has held that the defendant must be single-minded in his conduct.

The court did not abuse its discretion by rejecting Frei's proposed language.

## B.  Sentencing

Frei claims the district court erred in sentencing him, even though it imposed a below-guidelines sentence of 318-month's imprisonment.  Specifically, Frei says that the four-point enhancement under USSG § 3D1.4 and five-point enhancement under USSG § 4B1.5(b) resulted in "outweigh[ing] the individualized § 3553 factors to such a degree that the guideline starting point was substantively unreasonable."  But Frei's argument is misplaced.  By objecting to the § 3D1.4 and § 4B1.5(b) enhancements, and the guidelines starting point, he challenges the procedural reasonableness of his sentence, a challenge that he waived below and does not raise on appeal.  Therefore, we review the substantive reasonableness of his sentence only as it relates to the district court's downward variance.

"A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent 18 U.S.C. § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010).  "Although it is not impossible to succeed on a substantive-reasonableness challenge to a below-guidelines sentence, defendants who seek to do so bear a heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Here, the district court meticulously weighed the § 3553(a) factors and determined that Frei's sentence was necessary to achieve the sentencing goals.  First, it considered the nature and circumstances of Frei's crimes, noting that as horrifying as the crimes were, there are ways "the offense could be worse," such as if the minor were younger or Frei's conduct were violent.  Second, the court assessed Frei's personal history and characteristics, noting his childhood, work, substance-abuse, and criminal histories.  Third, the court determined that Frei's sentence

served to deter Frei from future conduct and to protect the public. Finally, the court addressed potential sentencing disparities.

Frei's argument "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently," which "is simply beyond the scope of [this court's] appellate review." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quotation marks and citation omitted).

The district court did not abuse its discretion in calculating and imposing this sentence.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.